UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Wesley Eugene Brooks,<br><br>    Plaintiff,<br><br>v.<br><br>Tom Roy, David Crist, Terry Carlson, Nenette Larson, Bruce Reiser, Douglas Panser, James Schaffer, and John/Jane Does 1-10,<br><br>    Defendants. | Case No. 12-cv-316 (SRN/JSM)<br><br>**MEMORANDUM OPINION AND ORDER** |

F. Clayton Tyler and Karen E. Mohrlant, F. Clayton Tyler PA, 331 2nd Avenue South, Suite 230, Minneapolis, Minnesota 55401; and Karin Ciano, Karin Ciano Law PLLC, 310 4th Avenue South, Suite 5010, Minneapolis, Minnesota 55415, for Plaintiff.

Angela Behrens, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, Saint Paul, Minnesota 55101, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on Plaintiff's Objections [Doc. No. 44] to United States Magistrate Judge Janie S. Mayeron's December 7, 2012, Report and Recommendation ("R&R") [Doc. No. 43].  The Magistrate Judge recommended that (1) Defendants' Motion to Dismiss or for Summary Judgment [Doc. No. 9] be granted; (2) Counts 1, 2, and 3 of the Complaint [Doc. No. 1] be dismissed with prejudice; and (3) the remaining state law claims be dismissed with prejudice.  For the reasons set forth below,

1

Plaintiff's Objections are overruled and the Court adopts the R&R in its entirety.

## II.    BACKGROUND

As the Magistrate Judge's R&R documents the factual and procedural background of this case, the Court incorporates it by reference. Plaintiff Wesley Eugene Brooks, a member of the Shakopee Mdewakanton Sioux (Dakota) Community, is currently serving a six-year sentence at the Minnesota Correctional Facility at Faribault ("MCF-FRB") for first-degree Driving While Impaired. Plaintiff was ordered to complete chemical dependency treatment via the New Dimensions program at MCF-FRB, which he began on November 14, 2011.

The New Dimensions program uses cognitive behavior therapy to help reframe cognitive distortions. (Aff. of Jennifer Nemecska ¶ 4 [Doc. No. 23].) During a typical week, program participants have daily group therapy for two hours (except on Tuesdays), and they individually meet with therapists as needed to assess treatment planning. (Id.) Participants also attend lectures on various topics, such as drug education, criminal and addictive thinking, release and reintegration, socialization, and values. (Id.) On a monthly basis, program therapists assess each client's progress. (Id. ¶ 5.) During this review, each therapist presents a client's case and discusses the following: a client's attitude toward treatment; a client's openness to addressing treatment barriers and problems; a client's willingness to identify the existence of a drug and crime issue; and how willing a client is to change and become a productive member of society. (Id. ¶ 5.)

Jennifer Nemecska, Plaintiff's primary therapist in the New Dimensions Program, states that Plaintiff resisted treatment from the outset: regularly arguing with staff, denying his need for treatment, and inadequately completing treatment assignments. (Id. ¶ 7.)

During his first few weeks in treatment, Plaintiff used his assignments to address unrelated issues and to complain about the lack of a treatment program specific to Native Americans. (Id.)

Plaintiff perceives the New Dimensions program to involve religious aspects, but this belief is unfounded. (Nemecska Aff. ¶ 13 [Doc. No. 23].) As part of treatment, offenders are encouraged to participate in "pro-social" activities. (Id.) These activities are meetings that occur in an offender's living unit or other buildings on the MCF-FRB campus. (Id.) Offenders are encouraged to attend two pro-social activities each week. (Id.) They can choose from religious programming at the facility, various "anonymous" programs like Alcoholics Anonymous, and other meetings like Alternative to Violence and Restorative Justice. (Id.) Plaintiff's participation in Native American activities offered to MCF-FRB's general population counts as a pro-social activity. (Id.) Other Native-American offenders have completed the New Dimensions program successfully. (Id.)

Plaintiff has submitted several Offender Kite Forms to prison staff about his treatment program and how it allegedly conflicts with his Native American beliefs. (Offender Kite Forms [Doc. No. 29-1].) These forms include:

- **November 23, 2011** – Plaintiff sent a kite to Ms. Nemecska, asking why his participation in Native American ceremonies did not count as "prosocial [sic] activities" while in treatment. Ms. Nemecska responded that it was at the therapist's discretion, and that religious activities could count as one of the two pro-social requirements of treatment. (Id. at 1.)

- **December 5, 2011** – Plaintiff sent two kites to Ms. Nemecska, asking why he had

3

been placed at the "decision table" about a "thinking report" he drafted, and whether the primary purpose of the treatment program was behavior modification. Ms. Nemecska responded that the treatment program was not challenging his core beliefs, and the purpose of the treatment program was to change his behavior. (Id. at 2-3.)

- **January 3, 2012** – Plaintiff sent a kite to Mr. Houff, the previous director of the New Dimensions chemical dependency treatment program, asking about the process for transferring to a Native American treatment program. Mr. Houff responded that he did not know of any Native American program at Minnesota Department of Corrections ("MDOC"), and staff had told him that they could incorporate Native American specific curriculum into his treatment. Mr. Houff also stated that if Plaintiff was not satisfied by this response, Plaintiff's next step was to contact Douglas Panser, Associate Director of Behavioral Health for MDOC. (Id. at 4.) Subsequently, Plaintiff spoke with Mr. Houff and asked if he could attend the Mas-ka-wisen Program in Sawyer, Minnesota, but Mr. Houff denied this request.

- **February 1, 2012** – Plaintiff sent a kite to James Schaffer, the present director of the New Dimensions chemical dependency treatment program. Plaintiff sought permission to count all of his Native American spirituality activities toward his pro-social requirements and notified Mr. Schaffer that he had been going to Narcotics Anonymous. Mr. Schaffer responded that his spiritual activity counted as pro-social activities and Plaintiff was not required to attend Narcotics Anonymous. (Id. at 5.)

- **February 2, 2012** – Plaintiff sent a kite to Mr. Panser, requesting transfer to a Native

4

American treatment center for needed care, conditional medical release, or a furlough. Mr. Panser responded that MCF-FRB had treatment supports to meet his needs, such as the Red Road and White Bison groups that are culturally specific to Native Americans. (Id. at 6.)

- **February 21, 2012** – Plaintiff sent a kite to Mr. Panser, stating that the Red Road and White Bison were not treatment programs, and that they were unavailable at the New Dimensions program. Mr. Panser responded that the Red Road and White Bison were not treatment programs, but they were cultural specific supports that could be incorporated into treatment. Mr. Panser stated that Plaintiff had not availed himself of these supports. Mr. Panser also stated that if Plaintiff wanted to start a Native American support group, he could and materials for him to do so were available. (Id. at 7.)

- **February 21, 2012** – Plaintiff sent a kite to Ms. Nemecska, asking her to clarify how he was resisting treatment, whether she was trying to make him look bad, or had "something personal against me." Ms. Nemecska responded with examples of resisting treatment. She also stated that she had nothing personal against Plaintiff and was not trying to make him look bad. (Id. at 8.)

Plaintiff states that he did not file a formal prison grievance about the treatment program, because he was allegedly told that there was no appeal from treatment decisions. Plaintiff also expressed concern that Ms. Nemecska would be hostile to grievances, and that using the prison grievance system might subject him to discipline and expulsion from treatment. (Aff. of Wesley Eugene Brooks in Opp'n to Defs.' Mot. for Summ. J. ¶ 16 [Doc.

5

No. 29]; Aff. of Wesley Eugene Brooks in Supp. of his Objection to the Magistrate Judge's Report & Recommendation ¶ 48 [Doc. No. 32].)

On February 7, 2012, Plaintiff sued the following, individually and in their official capacities: Tom Roy, Commissioner of the Minnesota Department of Corrections ("MDOC"); David Crist, Deputy Commissioner of the MDOC; Terry Carlson, Assistant Commissioner of the MDOC; Nanette Larson, Director of Health Services of the MDOC; Bruce Reiser, Warden of MCF-FRB; Douglas Panser, Director of Psychological Services at MCF-FRB; James Schaffer, Director of New Dimensions Chemical Dependency Program; and John/Jane Does 1-10, who are members of the New Dimensions program—all for violations of the First Amendment of the United States Constitution under 42 U.S.C. § 1983; Section 3 of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"); the American Indian Religious Freedom Act, 42 U.S.C. § 1996 ("AIRFA"); and the Freedom of Conscience clause under Article I, § 16 of the Minnesota Constitution.  (Compl. [Doc. No. 1].)  After beginning this lawsuit, Plaintiff was terminated from the MCF-FRB chemical dependency program for non-compliance with the program.

On March 1, 2012, Defendants moved to dismiss Plaintiff's Complaint, or in the alternative, to enter summary judgment.  (Defs.' Mot. to Dismiss or for Summ. J. [Doc. No. 9].)  The Magistrate Judge recommended dismissing Plaintiff's claims under the AIRFA, 42 U.S.C. § 1996, and his individual-capacity claims under the RLUIPA, 42 U.S.C.§ 2000cc-1, for failure to state a claim; entering summary judgment on the remaining federal claims based on Plaintiff's failure to exhaust his administrative remedies; and declining to exercise supplemental jurisdiction over Plaintiff's state-law claims.  (Dec. 7, 2012, Report and

Recommendation [Doc. No. 43].)

Plaintiff does not challenge the recommended dismissal of his AIRFA and individual-capacity RLUIPA claims. (Pl.'s Objections to Report and Recommendation at 2 [Doc. No. 44].) Plaintiff, however, objects to the recommended entry of summary judgment on the remaining federal claims, arguing that there is a question of material fact as to whether he exhausted his administrative remedies. (Id.) Plaintiff further argues that because the First Amendment and official-capacity RLUIPA claims survive summary judgment, the Court should exercise supplemental jurisdiction over the state law claims. (Id.)

## III.   DISCUSSION

### A. Standard of Review

A party "may file and serve specific written objections to a magistrate judge's proposed findings and recommendations." D.Minn. LR 72.2(b)(1). The district court will review *de novo* those portions of the R&R to which an objection is made, and it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3); D.Minn. LR 72.2(b)(3). Ordinarily, the district judge relies on the record of proceedings before the magistrate judge. D.Minn. LR 72.2(b)(3).

As to the underlying motion to dismiss, or in the alternative, for summary judgment, a motion to dismiss becomes a motion for summary judgment if matters outside the pleadings are considered. See FED. R. CIV. P. 12(d); Brooks v. Midwest Heart Group, 655 F.3d 796, 799-800 (8th Cir. 2011). Summary judgment must be granted if the movant

shows that no genuine dispute of material fact exists. FED. R. CIV. P. 56(a). A fact is "material" if "it might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When ruling on a summary judgment motion, the Court views the evidence and the inferences that may be reasonably drawn from it in the light most favorable to the non-moving party. Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a summary judgment motion, however, "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

### B. Exhaustion of Available Administrative Remedies

The Prison Litigation Reform Act of 1995 requires prisoners to exhaust administrative remedies before filing suit to challenge the conditions of their confinement. See 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Defendants argue that Plaintiff failed to exhaust his administrative remedies before commencing this action. Plaintiff argues that Defendants prevented him from pursuing his administrative remedies.

The parties do not dispute the Department of Corrections' ("DOC") exhaustion procedure. To exhaust challenges to treatment directives and programming decisions, DOC

8

Rule 500.308 requires an offender to appeal first to his correctional facility's psychological services director and then to the DOC's Director of Behavioral Health Services. (Aff. of Steven Allen ¶ 3 [Doc. No. 12].) An appeal to the Director of Behavioral Health Services is necessary for an offender to exhaust his available administrative remedies. (Id.)

On other issues, the offender must follow the procedure established in DOC Rule 303.100. This rule requires the offender to send kites to appropriate staff, following a chain of command, before pursuing the formal grievance process. (Aff. of Kobie Hudson ¶¶ 3, 5 [Doc. No. 13]; Minnesota Department of Corrections Grievance Procedure [Doc. No. 13-1].) Labeling a kite, letter, or other correspondence with DOC staff as a grievance does not convert it to a formal grievance. (Hudson Aff. ¶ 3 [Doc. No. 13].) The formal grievance process here has two levels: first, the offender must file a grievance with the grievance coordinator at his correctional facility, and the facility's warden or designee decides the grievance. (Id.) If an offender fears retaliation by the facility, he may file the grievance directly with the general counsel and litigation manager at the DOC's Central Office. (Id.) If he is dissatisfied with the decision, he may then file a grievance appeal, which is decided by the Commissioner of Corrections, the Assistant Commissioner, or the Deputy Commissioner. (Id.) An offender exhausts the DOC's available administrative remedies only by filing a formal grievance and grievance appeal. (Id.)

> The Magistrate Judge concluded that
>
> regardless of how one characterizes Brooks' complaints to staff regarding his chemical dependency treatment—as a challenge to the assessment or the program, a challenge to the impact of the program's content (or lack of content) on his religious beliefs, or a challenge to the program's location—it is evident that Brooks did not exhaust the administrative remedies set forth in

9

either MDOC 500.308 or MDOC 300.100.

(Dec. 7, 2012, Report and Recommendation at 25 [Doc. No. 43].)  The Court agrees. Plaintiff was assessed in April 2011 regarding whether any chemical dependency treatment was appropriate, and on November 14, 2011, Plaintiff began his treatment with the New Dimensions program at MCF-FRB.  If viewed under DOC Rule 500.308, the record does not show that Plaintiff appealed the assessment or the program treatment to the correctional facility's psychological services director.  Plaintiff argues that he submitted kites to Ms. Nemecska, Mr. Houff, Mr. Schaffer, and Mr. Panser, contesting the denial of his request for a transfer, conditional medical release, or a furlough.  The use of the kite system, however, does not satisfy the formal grievance process.  King v. Dingle, 702 F. Supp. 2d 1049, 1067-68 (D. Minn. 2010).  Even if the Court viewed the kites as grievances—which it does not—Plaintiff never appealed anything to the DOC's director of behavioral health services, as required under Rule 500.308.  The Court therefore finds that Plaintiff did not exhaust his administrative remedies under DOC Rule 500.308.

Similarly, Plaintiff has not exhausted his administrative remedies under DOC Rule 300.100.  Plaintiff filed kites, as mentioned earlier, but he never filed a formal grievance with the facility grievance coordinator or the general counsel and litigation manager at the DOC's Central Office.  Nor did he ever file a formal grievance appeal.  Where neither level of the grievance procedure was met, Plaintiff failed to exhaust his administrative remedies under Rule 300.100.

Plaintiff argues that he was prevented from filing a formal grievance because (1) New Dimensions staff, Ms. Nemecska and Mr. Schaffer, told him that treatment decisions

10

were not appealable; (2) he was concerned that Ms. Nemecska would be as hostile to grievances as she was to kites; and (3) he was concerned that using the prison grievance system might subject him to discipline and expulsion from treatment. (Aff. of Wesley Eugene Brooks in Opp'n to Defs.' Mot. for Summ. J. ¶ 16 [Doc. No. 29]; Aff. of Wesley Eugene Brooks in Supp. of his Objection to the Magistrate Judge's Report & Recommendation ¶ 48 [Doc. No. 32].) The Court respectfully disagrees. Other than Plaintiff's own statements, there is no evidence that New Dimensions staff denied him of his right to file a grievance. Rather, the record shows that all offenders receive information about grievance procedures when they enter the DOC's custody, and they have access to all DOC policies while in custody. (Third Aff. of Kobie Hudson ¶ 2 [Doc. No. 36].) Moreover, 42 U.S.C. § 1997(e)(a) does not permit the Court to consider Plaintiff's subjective beliefs, logical or otherwise, in determining whether administrative procedures are "available." Lyon v. Del Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002). Plaintiff's beliefs about Ms. Nemecska's purported hostility toward grievances and his concern about potential consequences to using the prison grievance system are insufficient to defeat summary judgment on the issue of exhaustion. Plaintiff is required to use the formal grievance procedure after his use of the informal kite system failed to resolve his issues.

Whether viewed through the lens of DOC Rule 500.308 or 300.100, Plaintiff has not exhausted available administrative remedies before bringing suit. Accordingly, the Court dismisses his claims under RLUIPA and 42 U.S.C. § 1983 with prejudice.

### C. Supplemental Jurisdiction

A federal district court has the discretionary power to decline jurisdiction where it

has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004). Because the Court dismisses all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Plaintiff's state law claims are dismissed without prejudice.

## IV.   ORDER

The Court therefore **OVERRULES** Plaintiff's Objections [Doc. No. 44] and **ADOPTS** the Magistrate Judge's December 7, 2012, Report and Recommendation [Doc. No. 43]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss or for Summary Judgment [Doc. No. 9] is **GRANTED**;

2. Counts 1, 2, and 3 of the Complaint are **DISMISSED** with prejudice; and

3. The remaining state law claims are **DISMISSED** without prejudice.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:     January 14, 2014                     s/ Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Court Judge